IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01191-BNB-KLM

DOMANIQUE DIXON,

Plaintiff,

v.

UNITED STATES POSTAL SERVICE, and
JOHN E. POTTER, Postmaster General of the United States Postal Service,

Defendants.

_____

**ORDER**
_____

This matter is before me on **Defendants' Corrected Motion for Summary Judgment** [Doc. # 82, filed 8/10/07] (the "Motion").[1] The Motion is GRANTED, and summary judgment shall enter in favor of the defendants on all of the plaintiff's claims.

**I. STANDARD OF REVIEW**

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S.

---

[1] The defendants filed their initial summary judgment motion on July 20, 2007 [Doc. #76]. The exhibits to the motion were filed on July 24, 2007 [Doc. #77]. On August 10, 2007, the defendants filed a notice of errata regarding the summary judgment motion [Doc. #80] and a corrected summary judgment motion. The corrected motion does not have exhibits attached. The corrected motion was accepted for filing [Doc. #82], and the initial motion for summary judgment was mooted by the corrected motion. In my analysis of the corrected motion, I cite to the exhibits which were submitted with the initial motion. The plaintiff requests that the exhibits be disregarded because they were filed four days after the dispositive motion deadline. *Plaintiff's Response to Defendants' Motion for Summary Judgment* [Doc. #81] (the "Response"), third consecutive page. The plaintiff's request is denied.

144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials, and affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific evidence showing that there is a genuine issue for trial. Id. at 324.

Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. The plaintiff is currently employed by the United States Postal Service ("USPS"). *Amended Complaint*, p. 1.

2. On December 21, 1998, the plaintiff sought Equal Employment Opportunity ("EEO") counseling. She alleged that she was discriminated against on the basis of race, sex, and physical disability when (a) she was written up for sleeping in the break room, and (b) her job assignment was not within her medical restrictions. *Motion*, Ex. A-19, p. 1.[2]

---

[2] I note that many of the defendants' undisputed facts are supported by unauthenticated business documents. The plaintiff does not object to the use of the documents, nor does she dispute the factual statements contained in the documents. Accordingly, I include the undisputed

2

3. The USPS issued a final decision dismissing the complaint for failure to state a claim. On appeal, the Equal Employment Opportunity Commission ("EEOC") reversed the agency's decision and remanded the complaint. Id. at pp. 1-2.

4. The plaintiff and the USPS entered into a Settlement Agreement on August 30, 2001. The agreement resolved all of the plaintiff's pending charges with the USPS. Id. at Ex. A-13.

5. The Settlement Agreement provides that the USPS "agrees that there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice deemed illegal under the ADA or Title VII, as a result of filing this charge, or for giving testimony, assistance or participating in any manner in an investigation, proceeding or a hearing under the aforementioned Acts." Id. at ¶ 4.

6. The Settlement Agreement further provides:

> C. Respondent agrees to provide up to 40 hours of on-the-clock training in the Safety area. Complainant will identify the training desired, and coordinate the arrangements through Judy Ford in the Labor Support office. The training will be provided in accordance with Postal Service rules and regulations.
>
> D. Respondent agrees to send Complainant to career counseling in the PEDC office. The counseling will identify opportunities within the Postal Service for career development.

Id. at ¶ 8.

7. On January 28, 2004, the plaintiff filed an EEO Complaint of Discrimination. She alleged that, in breach of the Settlement Agreement, the USPS retaliated and discriminated against her by giving her safety technician position to another employee, Alice Du Bouchet. Id. at Ex. A-1, EEO Complaint of Discrimination, pp. 1-3.

---

factual statements in my analysis of the Motion.

8. On May 20, 2004, the USPS excised the plaintiff's discrimination claims from her breach of contract claim. Id. at Ex. A-5; *Initial Complaint* [Doc. #1], third consecutive page. The agency found that the issues raised in the plaintiff's discrimination claims were identical to those raised in an EEOC class complaint entitled Edmond Walker v. John E. Potter (the "Walker class action"). The plaintiff's discrimination claims were to be held in abeyance until the EEOC issued a decision regarding certification of the Walker complaint. *Motion*, Ex. A-5.

9. The plaintiff appealed the agency's decision to the EEOC Office of Federal Operations on May 24, 2004. Id. at Ex. A-6.

10. On June 27, 2005, the plaintiff filed her initial Complaint in this Court [Doc. #1]. The Complaint asserted two claims for relief. Claim One alleged that, in breach of the Settlement Agreement, the defendant removed the plaintiff from her position as a Safety Technician; placed her in unsafe working conditions in retaliation for filing the EEOC claims; then placed her into a position with little or no opportunity for career development. Claim Two alleged that the USPS erred when it decided to "lump Plaintiff's retaliation claim in with the *Walker* class action."

11. On September 30, 2005, the EEOC found that the plaintiff's discrimination claims did not fall within the parameters of the Walker class action. The EEOC reversed the agency's decision and remanded the claims back to the USPS for further processing. The EEOC also informed the plaintiff of her right to file a civil action on her underlying Complaint of Discrimination. Id. at Ex. A-4.

12. The plaintiff received the EEOC's decision on or before October 13, 2005. Id. at Ex. A-20, p. 1.

13. On January 16, 2006, the plaintiff moved to amend her Complaint to add the discrimination claims. [Doc. #25]. On January 23, 2006, I denied without prejudice the plaintiff's motion to amend. The plaintiff filed a renewed motion to amend on February 3, 2006 [Doc. #33]. I granted the motion on March 3, 2006 [Doc. #39], and the Amended Complaint was filed on the same day [Doc. #40].

The Amended Complaint asserts five claims. Claim One alleges that the defendants breached the Settlement Agreement. Claim Two alleges that the defendants removed the plaintiff from her position as a Safety Monitor; reassigned her to a position incompatible with her disability; then reassigned her to a position with no chance of career advancement. Claim Two further alleges that "it appears that the USPS had no legitimate reason for moving Plaintiff to progressively more unfavorable positions except for Plaintiff's questions and complaints." Claim Three alleges that the defendants' reassignments of the plaintiff's job positions violated the Rehabilitation Act. Claim Four has been dismissed [Doc. #58]. Claim Five alleges that, in violation of Title VII, the plaintiff was discriminated against based on her race when she was removed from her position as Safety Monitor and replaced by a Caucasian individual.

### III.  ANALYSIS

#### A.  Proper Defendant

The defendants assert that the United States Postal Service must be dismissed because the Postmaster General is the only proper defendant in a suit for employment discrimination. In employment discrimination suits against the federal government, the head of the agency must be the named defendant. 42 U.S.C. § 2000e-16(c). Therefore, John E. Potter is the only proper

defendant in this suit, and the United States Postal Service is improperly named as a defendant. The Motion is GRANTED insofar as it seeks dismissal of the United States Postal Service.

### B. Timeliness of the Filing of Claims Two, Three, and Five

As noted above, the plaintiff's initial Complaint contained two claims: (1) that the defendant breached the settlement agreement by removing the plaintiff from her position as a Safety Technician, placing her in unsafe working conditions in retaliation for filing the EEOC claims, then placing her into a position with little or no opportunity for career development; and (2) that the USPS erred when it decided to "lump Plaintiff's retaliation claim in with the *Walker* class action." The plaintiff was granted leave to file an Amended Complaint which added claims for retaliation, race discrimination in violation of Title VII, and disability discrimination in violation of the Rehabilitation Act (asserted in Claims Two, Three, and Five).

The defendant seeks dismissal of Claims Two, Three, and Five on the basis that they are the claims the USPS excised from the plaintiff's EEO Complaint of Discrimination; the EEOC issued a final decision regarding the claims on September 30, 2005; and the plaintiff did not assert them in this Court within 90 days of receiving the EEOC's final decision. *Motion*, pp. 17-19. The plaintiff does not dispute that Claims Two, Three, and Five are the discrimination claims excised by the USPS and that the EEOC issued a final decision regarding the claims on September 30, 2005. She asserts, however, that she timely filed the claims in this Court.

Special regulations govern the filing of discrimination claims by federal government employees. 29 C.F.R., Part 1614. A federal employee may file a civil action under the following circumstances:

> A complainant who has filed an individual complaint . . . is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

Id. at § 1614.407.

Under subparts (a) and (b), the plaintiff could have asserted Claims Two, Three, and Five in this Court within 90 days of the USPS's final action if no appeal had been filed, or after 180 days of filing the EEO Complaint of Discrimination if no appeal had been filed and the agency had not taken final action. Subparts (a) and (b) do not provide the plaintiff with authority for asserting the claims in this Court because she filed an appeal of the agency's decision.

Under subpart (c), the plaintiff could have filed her discrimination claims in this Court within 90 days of receiving the EEOC's final decision. The EEOC issued its final decision on September 30, 2005. *Motion*, Ex. A-4. The plaintiff received the final decision on or before October 13, 2005. Id. at Ex. A-20, p. 1. Thus, the plaintiff had until January 11, 2006, to assert the claims in this Court. The plaintiff did not seek leave to amend her Complaint to add the discrimination claims until January 16, 2006 [Doc. #25]. Therefore, subpart (c) is not available to the plaintiff.

Under subpart (d), the plaintiff could have filed her discrimination claims in this Court after 180 days from the date of filing her appeal with the EEOC if there had been no final decision by the Commission. The plaintiff appealed the agency's decision to the EEOC on May 24, 2004. Under subpart (d), the plaintiff was permitted to file a civil action after 180 days from that date, or after November 20, 2004, if the EEOC had not issued a final decision. The EEOC did not issue a final decision until September 30, 2005. Thus, the plaintiff could assert the discrimination claims in this Court anytime after November 20, 2004, but before the EEOC issued its final decision on September 30, 2005. She did assert the claim in this Court until January 16, 2006.

Because the plaintiff failed to file her claims within 90 days of the EEOC's final decision, and because she failed to file her claims between November 20, 2004, and September 30, 2005, her claims are untimely.

I am aware that the time period for filing a civil lawsuit is not jurisdictional; it is in the nature of a statute of limitations that is subject to waiver, estoppel, and equitable tolling. Biester v. Midwest Health Services, Inc. 77 F.3d 1264, 1267 (10th Cir. 1996). However, the plaintiff does not argue that waiver, estoppel, and equitable tolling apply to her circumstances.[3] Her sole argument is that Claims Two, Three, and Five were timely filed because I allowed her to amend the complaint to add these claims. This argument ignores the language of my order. In granting

---

[3]I note that the EEOC's final decision does not precisely state the language of the regulations regarding a claimant's right to sue. *Motion*, Ex. 4. However, the plaintiff does not argue that the EEOC's imprecise language caused her to miss the 90 day deadline. Moreover, the plaintiff was represented by counsel at the time the final decision was received. Id. at Ex. 20. Therefore, she cannot claim ignorance of the law. See e.g., Kale v. Combined Ins. Co. of America, 861 F.2d 746, 752 (1st Cir. 1988).

the plaintiff leave to amend her Complaint to add the claims, I specifically stated that "I [could] not say as a matter of law and on the record now before me that the proposed amendments are futile." In other words, the record was not sufficiently developed--as it is here on the defendant's motion for summary judgment--to make that determination.

The Motion is GRANTED insofar as it seeks dismissal of Claims Two, Three, and Five as untimely filed.

### C. Claim One: Breach of Settlement Agreement

The defendant asserts that he is entitled to summary judgment on Claim One because there is no evidence that the Settlement Agreement was breached. "The moving party may carry its initial burden . . . by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

In Claim One, the plaintiff alleges the following:

> The Settlement Agreement of August 31, 2001 provided that Plaintiff would receive job training and career advancement opportunities. At the very least, this contract also necessarily included an agreement between the parties that the USPS would not take affirmative action to thwart Plaintiff's career advancement. If the Settlement Agreement did not include such an agreement, then the promises offered to the Plaintiff in consideration of the dismissal of Plaintiff's claims were entirely illusory.

*Amended Complaint*, p. 4.

The Settlement Agreement provides the following:

> C. Respondent agrees to provide up to 40 hours of on-the-clock training in the Safety area. Complainant will identify the training desired, and coordinate the arrangements through Judy Ford in the

> Labor Support office. The training will be provided in accordance with Postal Service rules and regulations.
>
> D. Respondent agrees to send Complainant to career counseling in the PEDC office. The counseling will identify opportunities within the Postal Service for career development.

Id. at ¶ 8.

The enforcement and interpretation of Title VII settlement agreements are governed by federal common law because they are "inextricably linked" to the underlying law of Title VII. Heuser v. Kephart, 215 F.3d 1186, 1190 (10th Cir. 2000). In construing disputed contractual provisions, the court must first determine if the provisions are ambiguous. International Transducer Corp. v. United States, 30 Fed. Cl. 522, 526 (1994). "When provisions in a contract are clear and fit the case, they should be given their plain and ordinary meaning." A-transport Northwest Co. Inc. v. United States, 36 F.3d 1576, 1584 (Fed.Cir. 1994). The ordinary meaning controls rather than a party's subjective, but unexpressed intent. International Transducer Corp., 30 Fed. Cl. at 526.

In clear and unambiguous terms, the Settlement Agreement provides that the USPS will provide the plaintiff with 40 hours of training in the Safety area and with career counseling and will identify opportunities for career development. The plaintiff does not assert that the USPS failed to provide her with the training and career counseling. Nor does she assert that the USPS failed to identify opportunities for career development. Instead, she attempts to insert an additional term into the agreement by claiming that the Settlement Agreement guaranteed career advancement. The Settlement Agreement does not contain any language which obligates the USPS to secure advancement of the plaintiff's career, however; it merely obligates the USPS to identify opportunities for career development.

The plaintiff claims that "[i]f the Settlement Agreement did not include such an agreement, then the promises offered to the Plaintiff in consideration of the dismissal of Plaintiff's claims were entirely illusory." A promise is illusory if it cannot be sufficient consideration to support a contract. *Restatement (Second) of Contracts* § 77 (1981).

The defendant's promises to the plaintiff were not illusory. In addition to providing training, career counseling, and identifying opportunities for career development, the defendant paid $25,000.00 to the plaintiff in full settlement of her discrimination claims. *Motion*, Ex. 13, ¶ 8. In addition, the defendant paid $10,000.00 to the plaintiff's attorney in full settlement of her claim to attorney fees and costs. Id.

Claim One further alleges:

> Additionally, the Settlement Agreement specifically prohibits further discrimination and retaliation. Plaintiff's other claims therefore also constitute violations of the Settlement Agreement.

*Amended Complaint*, p. 4.

In other words, the plaintiff asserts that the actions alleged in Claims Two, Three, and Five constitute violations of the Settlement Agreement because the Settlement Agreement specifically prohibits further discrimination and retaliation.[4] The portion of the Settlement Agreement referenced by the plaintiff provides:

---

[4]The record establishes that Claims Two, Three, and Five, insofar s they are asserted as separate claims, were not timely filed and, therefore, are barred from consideration on the merits. However, the defendant does not provide any argument or evidence to show that Claims Two, Three, and Five are barred from consideration insofar as they are swept within Claim One. Neither party provides a copy of the final decision regarding the breach of contract claim. Therefore, it is impossible to discern exactly what allegations the USPS and the EEOC considered and decided regarding this claim. However, both parties are proceeding as if Claim One, as asserted in the Amended Complaint, has been fully exhausted and timely filed in this Court. Therefore, I consider Claim One in its entirety.

11

> Respondent agrees that there shall be no discrimination or
> retaliation of any kind against any person because of opposition to
> any practice deemed illegal under the ADA or Title VII, as a result
> of filing this charge, or for giving testimony, assistance or
> participating in any manner in an investigation, proceeding or a
> hearing under the aforementioned Acts.

Id. at ¶ 4.

Thus, the terms of the Settlement Agreement prohibit discrimination or retaliation for (a) engaging in opposition to discrimination, (b) filing the initial charge of discrimination, or (c) participating in an investigation, proceeding, or hearing related to the ADA or Title VII.

Claim Three alleges that the defendants' reassignments of the plaintiff's job positions violated the Rehabilitation Act. Claim Five alleges that, in violation of Title VII, the plaintiff was discriminated against based on her race when she was removed from her position as Safety Monitor and replaced by a Caucasian individual. There is no allegation, however, that these actions were taken because the plaintiff (a) engaged in opposition to discrimination, (b) filed the initial charge of discrimination, or (c) participated in an investigation, proceeding, or hearing related to the ADA or Title VII. Therefore, the actions alleged in Claims Three and Five, even if true, do not constitute violations of the Settlement Agreement.

Claim Two alleges that the plaintiff was reassigned from her position as a Safety Monitor to a position that "her disability prevented her from carrying out," then reassigned to a "dead-end position with no chance of career advancement." Claim Two further alleges that "[s]ubject to further discovery, it appears that the USPS had no legitimate reason for moving Plaintiff to progressively more unfavorable positions except for Plaintiff' questions and complaints." *Amended Complaint*, p. 5. The allegations of Claim Two do not describe the substance of the plaintiff's "questions and complaints." Therefore, Claim Two does not allege whether the

12

plaintiff was retaliated against because she (a) engaged in opposition to discrimination, (b) filed the initial charge of discrimination, or (c) participated in an investigation, proceeding, or hearing related to the ADA or Title VII.

However, in her response to defendant's summary judgment motion, the plaintiff argues that she "was reassigned from her Safety Monitor job in 2003, which she believes is in retaliation for the original EEO Complaint and Settlement Agreement." *Plaintiff's Response to Defendants' Motion for Summary Judgment* [Doc. #81] (the "Response"), fifth and sixth consecutive pages.[5] Thus, it appears that the plaintiff is claiming that defendant moved her to progressively less favorable positions in retaliation for filing the first EEO Complaint (which resulted in settlement), and that these actions violated the Settlement Agreement.

In support of this argument, the plaintiff cites to paragraphs 9 and 10 of Exhibit 3, which is her affidavit. In paragraphs 9 and 10, the plaintiff states the following:

> I believe that my assignment to a kiosk position was in retaliation because of my complaints lodged against the U.S. Postal Service with the EEO in 1999.
>
> I believe that my assignment to a kiosk position was in breach of my Settlement Agreement with the U.S. Postal Service.

*Response*, third consecutive attachment, ¶¶ 9-10.

---

[5]The plaintiff also argues that she has exhausted her administrative remedies as to Claim Two. Id. at fifth consecutive page. I note that exhaustion of Claim Two is of no significance because Claim Two was not timely filed. The plaintiff further argues that she has suffered injury and a material adverse effect due to the retaliation. Id. These arguments go to the merits of Claim Two and do not shed any light on whether the plaintiff was retaliated against in breach of the Settlement Agreement, *i.e.*, whether she was retaliated against for (a) engaging in opposition to discrimination, (b) filing the initial charge of discrimination, or (c) participating in an investigation, proceeding, or hearing related to the ADA or Title VII.

These statements are the totality of plaintiff's evidence that the defendant breached the settlement agreement in retaliation for filing the first EEO Complaint. The plaintiff's "evidence" is not sufficient to establish retaliation. Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995). "Conclusory and self-serving affidavits are not sufficient." Id. "Under Fed.R.Civ.P. 56(e), only statements made on personal knowledge will support a motion for summary judgment; statements of mere belief must be disregarded." Tavery v. United States, 32 F.3d 1423, 1427 n. 4 (10th Cir.1994) (internal quotations omitted). The plaintiff's "belief" statements are not factual; they are conclusory and self-serving.

The plaintiff does not provide any competent evidence to show that the defendant breached the terms of the Settlement Agreement. Accordingly, the defendants are entitled to summary judgment on Claim One.

## IV. CONCLUSION

For the reasons stated, Defendants' Corrected Motion for Summary Judgment is GRANTED, and summary judgment shall enter in favor of the defendants on all of the plaintiff's claims. The defendant may have his costs upon filing a bill of costs within ten days after the entry of this order. D.C.COLO.LCivR 54.1.

Dated April 29, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge